UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TONYA ROLLINS, | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 3:01CV951 (CFD) |
| | : | |
| V. | : | |
| | : | |
| HEERY INTERNATIONAL, INC., | : | |
| Defendant. | : | |
| | : | MARCH 2, 2004 |

**DEFENDANT'S REPLY TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME**

By Motion dated February 24, 2004, Plaintiff requested an additional two weeks within which to respond to Defendant's Motion to Dismiss and for Sanctions and Costs, dated February 3, 2004. Plaintiff therein accurately represents that the undersigned counsel had no objection to the requested extension of time.

Plaintiff's Motion for Extension of Time does more, however. It appends as attachments correspondence between counsel in this case, and items of correspondence between Plaintiff and the office of her counsel with the State's Attorney's office and the Connecticut Department of Public Safety regarding Plaintiff's prior criminal convictions. As these attachments pertain <u>not</u> to Plaintiff's Motion for Extension of Time (a Motion to which the undersigned counsel readily agreed) but rather to the merits of the underlying Motion to

Dismiss and for Sanctions and Costs, this Reply by Defendant is both necessary and appropriate.

The gravamen of Defendant's most recent Motion to Dismiss[1] is that Plaintiff continues to engage in a pattern of discovery abuse and that such misconduct is likely to continue into the future. Specifically, Defendant contends that in her December 15, 2003 "Supplemental Compliance" Plaintiff deliberately withheld evidence concerning the most recent of her several arrests and convictions for theft and blatantly misrepresented her employment history. In the correspondence inexplicably attached to Plaintiff's Motion for Extension of Time, Plaintiff seemingly takes the position that she could not disclose her most recent arrest and conviction because she had yet to receive copies of <u>her</u> <u>own</u> criminal records.[2] Plaintiff does not explain why she must await receipt of her own criminal records <u>before</u> disclosing a five-month old criminal conviction.[3]

Plaintiff also takes umbrage with Defendant's contention that Plaintiff was "trying to hide anything" with respect to her prior employment at Sally's Beauty Supply. Whether or not Plaintiff properly disclosed her employment at Sally's Beauty Supply is overshadowed by

---

[1] Defendant filed a prior Motion to Dismiss and for Sanctions and Costs on December 2, 2002. The Court ruled on that Motion on August 19, 2003.
[2] Attorney Darin's attached letter to undersigned counsel asserts that Plaintiff executed written requests for her criminal records on December 15, 2003, the day before service of her Supplemental Compliance. The actual requests by Ms. Rollins, however, are undated.
[3] In its February 3, 2004 Motion to Dismiss and for Sanctions and Costs, Defendant makes reference to Plaintiff concealing a prior felony conviction. The subject conviction was actually for a Class A Misdemeanor.

her perjurious deposition testimony concerning the circumstances surrounding the termination of that employment. In her May 21, 2002 deposition, Plaintiff testified that she left "Sally's" *voluntarily* on April 16, 2002, because of "no hours." They hired more people, said they had to take hours from people."[4] It is now known from independent sources that on April 16, 2002, Plaintiff was confronted by the Loss Prevention Manager for Sally's Beauty Supply to whom Plaintiff admitted being responsible for the theft of $866.96 worth of merchandise.[5] It is no surprise that Plaintiff uncharacteristically was able to recall an exact date as to her last day of employment at Sally's since she admitted to and was terminated for employee theft and <u>not</u> for a lack of hours, as Plaintiff testified at her deposition.

There is yet another reason why Plaintiff should not be too quick to assume the high ground with regard to the adequacy of her disclosure of her employment history. Plaintiff joined Defendant in October 1997 after having previously worked at the Connecticut State Department of Environmental Protection ("DEP"). In her August 26, 2002 deposition, Plaintiff testified that she was "employed from December 1996 through or up to October of 1997 at the DEP."[6] Plaintiff's testimony was patently false.

---

[4] A copy of the pertinent page of the deposition transcript is attached hereto as **Exhibit A**.
[5] See "Arrest Warrant Application" attached to Defendant's February 3, 2004 Motion to Dismiss and for Sanctions and Costs, ¶ 2, 4.
[6] A copy of the pertinent page of the deposition transcript is attached hereto as **Exhibit B**.

Attached hereto as **Exhibit C** are copies of some of Plaintiff's employment records at the DEP, together with a transmittal letter from that Department. Those records show that Plaintiff worked at the DEP for a mere six weeks, from September 23, 1996, through November 4, 1996, and not into October 1997, when she joined the Defendant, as she testified under oath.[7]

(Indeed, Plaintiff asserted emphatically at least *five* times that she "had to have" still been employed at the DEP in October, 1997, and testified unambiguously "Yes, I was still working there" as of October 13, 1997).

To the extent Plaintiff deems it an open issue, Defendant, for obvious reasons, declines the Plaintiff's invitation to withdraw its current Motion to Dismiss and for Sanctions and Costs.

DEFENDANT

By: /s/ Robert L. Keepnews
ROBERT L. KEEPNEWS (ct06787)
BERMAN AND SABLE, LLC
One Financial Plaza, 20th Floor
Hartford, Connecticut 06103
(860) 527-9699 (telephone)
(860) 527-9077 (facsimile)
E-mail: rkeepnews@bermansable.com

---

[7] As is the case with "forgetting" a five-month old criminal conviction, one does not simply overlook an eleven-month gap in employment history.

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Defendant's Reply to Plaintiff's Motion for Extension of Time, dated March 2, 2004 was mailed, via U.S. mail, first class, postage prepaid on this 2nd day of March, 2004 to:

Holly Quackenbush Darin, Esq.
Michael E. Satti, Esq.
Satti & Satti
225 State Street, Suite 200
New London, Connecticut 06320

_____
ROBERT L. KEEPNEWS

# EXHIBIT A

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT


* * * * * * * * * * * * * * *
                              *   DOCKET NO.
TONYA ROLLINS,                *   3:01CV951 (CFD)
         PLAINTIFF,           *
                              *
VS.                           *
                              *
HEERY INTERNATIONAL, INC., L.C. *
ASSOCIATES, INC.,             *                               *
         DEFENDANTS.          *
                              *
* * * * * * * * * * * * * * *


-----------------------------------------------------------
              DEPOSITION OF:  TONYA ROLLINS
-----------------------------------------------------------


          Taken before Irene A. Janazzo,
    Registered Professional Reporter, Lic./Reg.
    No. 00085, and Notary Public in and for the
    State of Connecticut, pursuant to the Federal
    Rules of Civil Procedure, at the offices of
    Pepe & Hazard, LLP, One Goodwin Square,
    225 Asylum Street, Hartford, Connecticut, on
    May 21, 2002, commencing at 10:10 a.m.



           BRANDON SMITH REPORTING SERVICE, LLC
                 11-A Capitol Avenue
                 Hartford, CT  06106
                 Tel:  (860) 549-1850
                 Fax:  (860) 549-1537
```

Rollins vs Heery International, Inc.

5/21/2002                                                                 Tonya Rollins

Page 22

1  A  I was a night key person, key holder, for the
2     store.
3  Q  How did you find out about that job opening?
4  A  I had an application on file, and they called
5     me in for an interview.
6  Q  When you say you had an application on file, at
7     what point did you submit your application?
8  A  It was about -- I think maybe a year I had it
9     on file with Sally's because I used to -- I go
10    in there to get my beauty supplies.
11 Q  How long after you received the call for the
12    interview did you go in and interview?
13 A  Well, they called me, and I came in the next
14    day.
15 Q  Who did you interview with?
16 A  For the Norwich store, it was Gigi. I do not
17    know her last name.
18 Q  How long after you interviewed did you find out
19    that you received the job?
20 A  That day. She hired me that day.
21 Q  What was the position -- I'm sorry. The night
22    key holder?
23 A  Right.
24 Q  Was that a full-time position?
25 A  No. It was part-time.

Page 23

1  Q  How many hours a week?
2  A  It varied between 20 and 35 hours.
3  Q  What was the wage rate?
4  A  Seven dollars.
5  Q  How long were you employed there?
6  A  Approximately nine months.
7  Q  So when did you leave Sally's?
8  A  April 16th.
9  Q  Of 2002?
10 A  2002.
11 Q  I'm smiling because we have a date attached to
12    something. Thank you. How do you remember
13    that date so well?
14 A  I just do. I just remember April 16th was my
15    last day there.
16 Q  Okay. Was your leaving Sally's voluntary or
17    involuntary?
18 A  Voluntary.
19 Q  Okay. What was the reason for your leaving?
20 A  No hours. They hired more people, said they
21    had to take hours from people.
22 Q  Now, I'm assuming that you -- correct me if I
23    go wrong -- that you started at Sally's within
24    a couple of days of getting suspended by Dunkin
25    Donuts. You were hired the day of the

Page 24

1     interview, and then you began right away at
2     Sally's; is that accurate?
3  A  I wouldn't say a couple days. I would say
4     within that week I did start. I'm not sure of
5     the timeframe of when I did start, but I was
6     happy that I got the job.
7  Q  Okay. Do you know how much time was between
8     the point when you were told that you had the
9     job to the point when you actually started work
10    at Sally's?
11 A  No, "I'm not."
12 Q  But you think it was no more than a week?
13 A  I'm not sure about that. I'm not sure of the
14    timing of that, when I started with Sally's.
15    Between Dunkin Donuts and Sally's, I'm not sure
16    of the timeframe in there.
17 Q  But what about the time between you were given
18    the offer by Sally's and then actually started
19    work?
20 A  I'm saying within a week.
21 Q  Okay. You said that you left Sally's because
22    you didn't get any hours. Can you give me a
23    sense of how your hours dropped?
24 A  I went from 35 hours I could do in a week down
25    to like 15 in a week. So they was fluctuating

Page 25

1     because we had a few people leave. So that's
2     how I was getting a lot of hours until they
3     hired more people.
4  Q  Okay. Did you work anywhere else while you
5     were working at Sally's?
6  A  No, I didn't.
7  Q  Did you do a job search before you left
8     Sally's?
9  A  No, I didn't.
10 Q  So while you were working at Sally's, you did
11    not search for a new job?
12 A  No.
13 Q  Have you held any other jobs since leaving
14    Heery?
15 A  Any other jobs besides Sally's, Dunkin Donuts
16    and --
17 Q  Other than the ones that we just talked about
18    which were Health Care Visions, YMCA, Dunkin
19    Donuts and Sally's, have you held any other
20    jobs since leaving Heery?
21 A  No. No, I haven't.
22 Q  What have you done since April 16 of 2002 to
23    search for work?
24 A  I've been searching for work.
25 Q  What have you done to search for work since

7 (Pages 22 to 25)

# EXHIBIT B

```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2
 3
        * * * * * * * * * * * * *
 4      TONYA ROLLINS,            )
              Plaintiff,          )
 5                                )    CIVIL ACTION NO.
           -vs-                   )    3:01CV951 (CFD)
 6                                )
        HEERY INTERNATIONAL, INC. )
 7            Defendant.          )
        * * * * * * * * * * * * *
 8
 9
                         VOLUME II
10                   Pages 239 - 425
11
12
                 Continued Deposition of TONYA ROLLINS,
13      taken before Bethany A. Carrier, a Court Reporter
        and Notary Public within and for the State of
14      Connecticut, pursuant to Notice and the Federal
        Rules of Civil Procedure, taken at the offices of
15      Robinson & Cole, 280 Trumbull Street, Hartford,
        Connecticut, on August 26, 2002, commencing at 10:15
16      a.m.
17
18
19
20
21
22
23            Bethany A. Carrier, LSR #071
              Brandon Smith Reporting Service
24                 11-A Capitol Avenue
              Hartford, Connecticut  06106
25                  (860) 549-1850
```

Page 368

1  Q  So this was a Frank at DEP?
2  A  Correct.
3  Q  And the reason they gave for letting you go was
4  what? Was it that you had too many doctor appointments?
5  A  It wasn't that I had too many doctor
6  appointments. It was I had -- they just released me. I
7  had a lot of like surgeries and things. I wasn't able to
8  be there on time.
9  Q  Were there any other reasons given to you?
10 A  Not that I can recall.
11 Q  When was it that they released you?
12 A  I can't remember that. I don't remember the
13 date. I don't remember the date.
14 Q  Well, on Defendant's Exhibit 7 it indicates you
15 were still working there, right?
16 A  Right.
17 Q  Was that true?
18 A  I don't recall. I don't recall. I can't
19 speculate on this. I can't recall dates here.
20 Q  So it's possible that at the time that you
21 submitted this resume, that you had already been
22 terminated by DEP?
23 A  I'm not sure. I'm not sure about the dates
24 here at all.
25 Q  So it's possible that when you applied with

Page 369

1  Heery for employment, that you had already been
2  terminated by DEP?
3  A  Yes. It's possible.
4  Q  So even with the representation on your resume
5  saying you were still employed there, you would have lied
6  to Heery about whether you were currently employed at
7  DEP?
8  A  Well, I'm not going to say this is a lie
9  because the way I'm looking at this right now is -- when
10 I applied for this position, I had to have still been
11 working here. This is just a resume, something I
12 submitted over. So I could have still been working
13 there.
14 Q  Well, that's the question.
15 A  I could have still been working here. This is
16 just a resume, something I submitted to get a job. I
17 could have still been employed. And I'm thinking I was
18 still employed at the time.
19 Q  But you don't know?
20 A  But I'm not sure. But I'm pretty sure. I
21 wouldn't just lie on a resume. What I'm saying is when
22 this position became available I had to have still been
23 working there is what I'm telling you.
24 Q  You're pretty sure you wouldn't lie on a
25 resume, but you're not sure?

Page 370

1  A  I wouldn't have lied like that, no. Because I
2  had to have still been working here when I submitted this
3  resume for the position at Heery's. I had to have still
4  been working here. If they was to contact me for an
5  interview and I had this down with the phone number, why
6  would I put that? No, I had to have still been working.
7  Q  So that means that you were employed at DEP
8  from December 1996 to October of 1997?
9     MS. QUACKENBUSH DARIN: Objection as to
10 form. I'm not sure what you mean by "that means." What
11 she says here or -- go ahead.
12 BY MS. HAERTER:
13 Q  Based on your testimony and based on what
14 you've represented on your resume on Defendant's Exhibit
15 7, you're telling me that you were employed from December
16 1996 through or up to October of 1997 at the DEP?
17    MS. QUACKENBUSH DARIN: Objection as to
18 form. Go ahead.
19 A  Yes. I believe I had that job until the 13th.
20 Yes, I still was working there.
21 BY MS. HAERTER:
22 Q  You seem more an more certain of that.
23 A  Yes, because I just wouldn't put present on
24 there and not be there if they had to call me to come in
25 for an interview because I'm at the DEP, it's right down

Page 371

1  the street. They would have to contact me.
2  Q  Now, according to Defendant's Exhibit 7, your
3  resume, you were at Super 8 Motel from January 1996
4  through December 1996, correct? I'm reading upside down,
5  so --
6  A  Right. That's what it's showing.
7  Q  So according to your resume, you went from your
8  Super 8 job to the DEP job within the same month; is that
9  right?
10 A  I think this date here is wrong on Super 8.
11 Q  What date do you think is wrong?
12 A  I don't recall the dates for Super 8. I don't
13 recall the dates. It's so long ago. I don't recall the
14 dates at all.
15 Q  What date do you think is wrong?
16 A  January. I'm not sure of the dates.
17 Q  Did you change jobs from Super 8 to DEP within
18 the same month as indicated on your resume?
19 A  I don't know if it was before or after. Like I
20 said, I'm not sure of the dates.
21 Q  Well, you're not sure as you sit here today.
22 When you made up this resume, it could have been closer
23 in time to the actual time that you held the jobs; isn't
24 that right?
25 A  Right. But if you're not good with dates,

34 (Pages 368 to 371)

# EXHIBIT C

  

# STATE OF CONNECTICUT
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

February 4, 2004

Robert L. Keepnews Esq.
Berman and Sable LLC
One Financial Plaza
Hartford, CT 06103

Re:   Tonya Rollins – SS#████████

Dear Attorney Keepnews:

In response to your request, I have attached copies of the employment data on the above captioned employee,

Ms. Rollins was employed at the Department of Environment Protection from September 23, 1996 through November 4, 1996 as a seasonal employee, and worked a total of 162-1/2 hrs. The time and attendance records are enclosed.

If I may be of further assistance, please let me know.

Sincerely,

Elizabeth M. Villante
Financial Clerk, Payroll Unit

Enclosures

```
+------------+--------------------+---------------------------+--------+--------+
|EMP HIST (301) PRECORE!          |Request for Action: EMPLOY         |Pg 1  |HR07S600|
+------+-------------------+---------------------------+--------+--+--+-+------+
|PERSON|01 EffDt:09/23/1996|                           |02 Comm#:3100|1997|  1829|
+------+------+------------+-----------+---------------+--------+----+----+------+
|01 Pg2 02 Pg3|03 *EMP#: 616668         |04 Term Dt: 10/15/1996|Histry( 2 of  2)|
|02 Remarks +--+    SSN :                +----------------------+--+----------------+
+-----------+Last: ROLLINS               |                       |06 *Pos#: 00008849 |
|           |Frst: TONYA                 |PosTerm: 11/04/1996|OUTR-BOAT-BOAT-SPE |
|           | MI :                       |                   |*Ag:3100 NRR:DEP  |
+-----------+----------------------------+-------------------+-------------------+
|05    Act Cd: EM   EMPLOY                                                        |
|Lv/Sep Type:                                            Exp:                     |
|*SalChg Rsn:                                         11 Rules BU:                |
+-----------+------+---+---+-----+----+------------------+-------------------+----+
|   ClassCd|CmpPln|Grp|Prd|  BU |Step|Rate/Class Abbrev|                   |FLSA|
|From:     |      |   |   |     |    |                 |                   |    |
+-----------+------+---+---+-----+----+------------------+-------------------+----+
|Prp:07*3492| *VR  |*99|*H | *04 | 00 |08      $6.50    |10 *Deg:           |09 N|
|          |Flat R|   |   | OTHR|    |EP SEAS RES ASST |                   |    |
+-----------+------+---+---+-----+----+------------------+-------------------+----+
INFO: This person is not currently employed.
```

```
Feb 04, 2004           DEPARTMENT OF ENVIRONMENTAL PROTECTION            Page:    1
HR22R140 V2                   MASTER TA DETAIL REPORT


Emp#:   616668    PCN#:        00008849   Name: ROLLINS, TONYA

Date         Sec Pgm Act Sp Pay  Loc   Proj         Amt        Hrs Min
09/27/1996   157 159 60  80  0   579        0     $45.50       7: 00
09/30/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/01/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/02/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/03/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/04/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/06/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/08/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/09/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/10/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/11/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/15/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/16/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/17/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/18/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/21/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/22/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/23/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/24/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/25/1996   157 159 60  80  0   579        0     $29.25       4: 30
10/28/1996   157 159 60  80  0   579        0     $19.50       3: 00
10/29/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/30/1996   157 159 60  80  0   579        0     $45.50       7: 00
10/31/1996   157 159 60  80  0   579        0     $45.50       7: 00
11/04/1996   157 159 60  80  0   579        0      $6.50       1: 00
```