UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TONYA ROLLINS<br><br>         PLAINTIFF,<br><br>V.<br><br>HEERY INTERNATIONAL, INC.<br><br>         DEFENDANT | CIVIL ACTION NO.<br>3:01CV951 (CFD)<br><br><br><br><br><br><br><br>MARCH 11, 2004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

The Plaintiff, Tonya L. Rollins submits the following Memorandum of Law in opposing to the Defendant's Motion to Dismiss and for Sanctions dated February 3, 2004. The Defendant Heery's Motion is unsupported both factually and legally and is yet another attempt by the Defendant to smear the Plaintiff in order to misdirect attention away from its own conduct and the merits thereof. Thus, dismissal is inappropriate as is the imposition of sanction and costs against the Plaintiff.

I.   **NATURE OF THE CASE**

The Plaintiff, a black female, is a former employee of the Defendant, Heery International,

NO ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED

Inc. ("Heery") who worked as a document control clerk for approximately two years at the Amtrak train station in Old Saybrook. She filed the instant action alleging, inter alia, racial and sexual discrimination and retaliation by the Defendant in connection with her employment and termination thereof.

## II. DISCOVERY DISPUTE

### A. BACKGROUND

On or about December 9, 2002, the Defendant Heery filed prior Motion to Dismiss and for Sanctions and Costs to which the Plaintiff replied on January 8, 2003.[1] In the prior Motion to Dismiss, the Defendant asserted that the Plaintiff had deliberately refused to produce documents, misrepresented material facts under oath, frequently contradicted herself under oath, provided incomplete and inadequate responses, and demonstrated an entire course of conduct that allegedly cut at the heart of the discovery process and prejudiced Defendant. The Plaintiff in response argued that the Motion to Dismiss was procedurally premature under Rule 37(b) (2) and was unsupported factually and legally.

On or about August 14, 2003 the Honorable William I. Garfinkel, United States

---

[1] As does the Defendant herein, the Plaintiff directs the Court's attention to her Memorandum in Opposition to the Motion to Dismiss and incorporates herein by reference the fact, points, and authorities therein cited.

2

Magistrate Judge, denied the Motion to Dismiss and is so doing specifically ruled that:

> Heery's failure to further pursue alternate means of attaining discovery requests, before moving the court to impose sanctions, precludes this court from considering the more severe penalties available under Rule 37. The dismissal of the plaintiff's claims and court-imposed sanction upon the plaintiff and counsel would be procedurally premature, unduly severe, and over-broad at this point in the discovery process.

See Ruling on Discovery Motions ("Ruling") attached hereto as Exhibit A, at p. 3.

Further, the Court ruled that:

> ...the defendant has not set forth clear and convincing evidence showing bad faith on behalf of Rollins, or whether the misstatements constitute a pattern of behavior or the likelihood of the continuance of the alleged misconduct in the future. The Court finds the defendant has not shown that the plaintiff has acted in a manner so prejudicial to affect Heery's ability to defend this litigation so as to warrant dismissal."

See Ruling at page 4.

Shortly after the Court's ruling on August 14, 2003 the Defendant and Plaintiff's counsel engaged in a substantial amount of correspondence regarding supplemental discovery.[2] On or about December 16, 2003 the Plaintiff did in fact file her supplemental disclosures. It is

---

[2] In the Court's Ruling of August, 2003 the Court granted in part the Plaintiff's Motion to Compel further production. The Defendant indicated shortly thereafter in response to the ruling that it was searching for responsive documents but it was not until January, 2004 that the Defendant produced an additional 686 pages worth of documents! During this period of time the Plaintiff wrote several letters attempting to inquire about the status of the documents and to advise as to the Plaintiff's progress in providing supplemental responses. See Letters between the Plaintiff's Counsel and Defendant's counsel attached hereto as Exhibit B.

noteworthy that as part of that response Plaintiff provided the Defendants with authorizations to obtain her complete employment and medical records.[3]  See Exhibit C.

With respect to the two responses at issue the Plaintiff provided the following response:

> *6. Describe in detail any criminal convictions or guilty pleas entered with respect to you or on your behalf.*
>
> *Answer: Subject to the previously filed objection and without waiving same, in addition to information previously submitted, the Plaintiff counsel will submit additional responsive information, if any, as soon as possible.*
>
> *21.[4]  For the period from the beginning of your employment with Defendant Heery until the present, identify each employer, person or entity for whom you have performed services, and/or from whom you have received compensation in any form, and state: the dates of employment; the title of each job or position held; and for each job or position held the nature of the work you performed, the amount of compensation you received how the compensation was calculated (e.g. hourly, weekly, monthly, yearly), and the benefits you received or were eligible to receive, including but not limited to non-monetary benefits such as health insurance, vacation, sick leave, holidays, and short or long-term disability insurance.*
>
> *Subject to the previously filed objection, the Plaintiff discloses the following additional information:*

---

[3] Interestingly enough when doing so the Plaintiff modified the authorizations provided by the Defendant because the Defendant's counsel had never responded to her counsel's attempts to clarify these forms. If the employment information provided by the Plaintiff is as important as the Defendant would have this Court believe, it is inexplicable why the Defendant never responded to Plaintiff's counsel's requests for clarification of same.

[4] This interrogatory was really interrogatory 23 in the Plaintiff's initial compliance in February 2002 however when it was retyped the Plaintiff's counsel's office inadvertently typed "21" instead of "23".

4

> *2002 Dunkin Donuts, Route 2, Preston, Connecticut, supervisor, began December 31, 2002 until October 10, 2003, received $8.25/hour on a weekly basis.*
>
> *2002*
> *Krispy Kreme, Mogehan Sun, processor, began October 2003 to the present, $9.00/hour.*

The Defendant contends that these responses were false, and perjuriously evasive and incomplete. The alleged basis for this egregious remark is that the Plaintiff did not disclose her employment at Sally's Beauty Supply nor a felony conviction relating to alleged stealing from Sally's Beauty Supply. Specifically, the Defendant states that the Defendant lied about her employment and concealed her most recent arrest and conviction.

The Defendant's claim is wholly unsupported by the facts, including the responses themselves. With respect to the issue of convictions, the request asks the Plaintiff to describe in "detail" criminal convictions or guilty pleas entered by the Plaintiff and/or on her behalf. The Plaintiff specifically indicated that subject to previously filed objections, that she would provide additional responsive information, if any, as soon as possible. The Defendant treats this response as if the Plaintiff lied and responded "none" or failed to respond at all. However, since at the time of the Plaintiff's response, neither she nor the

5

undersigned had a copy of the records relating to the incident at Sally's Beauty Supply, the response provided was to ensure that the response given was not only **detailed** (as requested in the interrogatory) but to ensure that it was as accurate as possible so as to foreclose any accusations by the Defendant that the Plaintiff was providing false or evasive information as has been the Defendant's practice throughout this litigation. To this end, on December 16, 2003 the Plaintiff requested a copy of her criminal files.[5] See Letter attached hereto as Exhibit D. At the time the Motion to Dismiss was filed by the Defendant, the Plaintiff had not received a copy of those records.

Furthermore, with respect to Interrogatory 21 (i.e. 23) the Defendant contends that the Plaintiff did not disclose her employment at Sally's Beauty Supply and that this fact is somehow evidence of Rollins's deliberate attempts to conceal her "stealing" from Sally's Beauty Supply. However, the Defendant is well aware that such statements are false and if anyone is guilty of fraud upon the Court it is the Defendant. The Defendant is well aware that as part of the Plaintiff's initial compliance dated February 1, 2002 she specifically identified her employment at

---

[5] This request was identical in form to a previous request filed by the Plaintiff which resulted in the Court producing documents to the Plaintiff's counsel's office relating to the bad check incidents which were then disclosed to the Defendant. However, the Plaintiff to date has not received any documents from the Court in response to her December 16, 2003 request. However, as a result of a further request she received a one-page report and the portions which related to the criminal conviction for the incident at Sally's were forwarded to opposing counsel. See Exhibit J. She is still attempting to obtain a complete copy of the court's records of the incident to forward to

6

Sally's Beauty Supply as follows:

> Sally's Beauty, Sales/Keyholder, began work in August, 2001 **to the present**, 37 hours per week at $7.00 per hour. (Emphasis supplied.)
>
> See Plaintiff's February 21, 2002 Compliance attached hereto as Exhibit E at Interrogatory 23. [6]

Thus, as of February 21, 2002 the Defendant was fully aware that the Plaintiff worked for Sally's. Further, in a supplemental disclosure dated May 17, 2002 the Plaintiff produced a copy of her 2001 tax return which included a W-2 from Sally's Beauty Supply. See Plaintiff's May 17, 2002 Supplemental Compliance attached hereto as Exhibit F. In addition, the Defendant deposed the Plaintiff for two full days in May, 2002 and again in August of 2002. During both depositions the Plaintiff testified that she worked for Sally's until April of 2002. See Pages 21-24 of Tonya Rollins' May 21, 2002 Deposition and pp. 245-246 of Tonya Rollins' August 26, 2002 Deposition attached hereto as Exhibits G and H respectively. Lastly, the Plaintiff provided the Defendant in December, 2003 with a very broad authorization to obtain employment records from "any and all employers". See Exhibit C. Thus, it is disingenuous for the Defendant to accuse the Defendant Rollins of somehow trying to hide her employment at Sally's Beauty supply in an effort to conceal her subsequent conviction arising out of her employment at Sally's Beauty

---

opposing counsel.

[6] As indicated previously there was a typographical error in the Plaintiff's supplemental compliance and this

7

Supply. Such accusations are clearly belied by the facts as set forth above and in an effort to resolve this matter amicably, the Plaintiff's counsel forwarded a letter to opposing counsel on February 6, 2003 asking that the Motion to Dismiss be withdrawn. See Letter dated February 6, 2004 attached hereto as Exhibit I. The Defendant has never responded to that letter except in a subsequent reply to the Plaintiff's Motion for Extension of Time in which it indicated that it declined to withdraw the Motion to Dismiss.

### B. LEGAL ARGUMENT.

In the Defendant's Memorandum of Law it again relies upon McMunn v. Memorial Sloan-Kettering Cancer Center 191 F. Supp.2d 440, 442 (S.D.N.Y. 2002) to support its claims that this matter should be dismissed. However, "dismissal with prejudice is a particularly severe sanction....and a decision to impose such a sanction must be made with restraint and discretion." McMunn, at 442, citing Chambers v. NASCO, 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L. Ed. 2d 27 (1991). Dismissal requires the Court to find "willfulness, bad faith, or any fault" on the part of the party refusing discovery. Sakahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986).

Although the Defendant continues to maintain that Rollins has acted in bad faith and committed a fraud upon the Court, as set forth in McMunn, fraud upon the court "occurs where a party has knowingly acted in an attempt to hinder the fact finder's fair adjudication of the case

---

interrogatory was incorrectly labeled as #21 when it was really a supplemental response to Interrogatory #23.

8

and his adversary's defense of the action...[it is an] unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the **opposing party's claim or defense**." McMunn, at 445 (Citations omitted .) (Emphasis Added.)

The Defendant appears to miss one critical and important point, i.e. that the Plaintiff's conduct must be hampering it in its claims or defenses.[7] It has made no showing of how the Plaintiff's alleged evasive response regarding her conviction and her alleged false response regarding her employment at Sally's Beauty Supply has any bearing to the issues in this case, i.e whether the Defendant Heery discriminated against the Plaintiff and/or retaliated against the Plaintiff.

It is important to note that the conduct in McMunn directly affected the Defendant's defenses to the Plaintiff's claims. In McMunn, the Defendant's defense to the Plaintiff's ADA lawsuit was that she was terminated due to repeated unexcused absences from work. McMunn, at 446. The Defendant suspected that she spent these absences at her house in West Virginia and

---

[7] The Court in McMunn set forth five factors in determining whether misconduct constitutes fraud on the court: (1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue into the future. Id. at 446. However, not only was there no intentional bad faith by the Plaintiff as reflected in the facts set forth herein, but the Defendant is not prejudiced because the Defendant has not shown that such information is relevant to either the Plaintiff's claims and/or the Defendant's defenses and thus it has not shown that any alleged misconduct has

9

sought to discover her credit card statements in the expectation they would show billing activity in West Virginia. McMunn, at 446. During her deposition and after the court ordered the Plaintiff to disclose all credit cards she used during the relevant time period, the Plaintiff denied having credit cards other than American Express. Id. at 446. She also hinted her husband may have forged her signature to obtain a Visa Card but admitted later that the signature on the Visa Application discovered by the Defendant was her own. Id. at 447. The Court found that her conduct clearly "hindered the fact finder's fair adjudication of the case and the Defendant's defense of the action". Id at 448. Further, since the Plaintiff's conduct had spoiled "highly relevant evidence" her misconduct was highly prejudicial to the Defendant[8] thus sanctionable. Id. at 448.[9]

Likewise, although the Defendant relies upon McMunn v. Memorial Sloan-Kettering Cancer Center, 2002 WL 1560022 (S.D.N.Y. July 15, 2002) which was the Plaintiff's appeal of the lower court's dismissal of her action, in that decision the Court likewise focused on the fact that the Plaintiff's deceptive and bad faith conduct at issue therein was "for the purpose of

---

hampered the Defendant in the presentation of its case.

[8] The prejudice to the Defendant in McMunn was the result of the Defendant's spending significant time and money to pursuing discovery trying to defend the merits of the Plaintiff's claims as well is proving that she engaged in unfair litigation practices.

[9] Likewise, the other misconduct by the Plaintiff in McMunn went directly to the Defendant's defenses and/or the Plaintiff's claims, ie. the consequences of her termination. Id. at 448-460.

10

unfairly bolstering her claim that the [Defendant] left her destitute." Id at *1.

Here, there has been no claim that any of the information sought is in any manner relevant to any of the Plaintiff's claims and/or the Defendant's defenses. Thus, *assuming arguendo* that the Plaintiff somehow answered evasively and/or falsely, no showing has been made that this information relates to the Defendant's claims and/or defenses herein such that the Defendant is prejudiced by such conduct and McMunn simply does not apply.

Furthermore, the Defendant contends that Rollins' misconduct is the product of intentional bad faith. However, it does not substantiate this assertion except to speculate broadly that Rollins is somehow seeking to "postpone indefinitely a forthright response." In fact, given the facts as set forth above, it cannot substantiate this assertion because it is well aware that the Plaintiff Rollins disclosed her employment with Sally's as early as February of 2002. It is also aware that she worked there until April of 2002. Further, it is also aware by virtue of the Plaintiff's February 6, 2004 letter that the Plaintiff has attempted to obtain copies of records relating to the incident at Sally's Beauty Supply.[10]

---

[10] A copy of that letter and additional requests for information are attached hereto. Even though the Defendant apparently takes issue with the fact that the letter is undated the Defendant has no evidence to suggest that the request was not made on December 16, 2003. The Plaintiff and her counsel agree with counsel's innuendo in its recent March 2, 2004 Reply to the Plaintiff's Motion to Extension of Time suggesting she should be able to obtain copies of her own criminal records. However, to date she has been able to obtain anything form the court other than the information which is contained in Exhibit J despite repeated personal visits to the court, discussion with her public defender, and numerous telephone calls! It was not until March 10, 2004 that the undersigned office was finally

11

Further, Interrogatory #6 asked for a detailed description of any criminal conviction or guilty pleas. The Plaintiff can hardly be faulted, given the Defendant's tactics in this matter from day one, i.e. to discredit the Plaintiff at all costs and continually portray her as evasive and a liar, for wanting to receive and examine a copy of her criminal records prior to submitting an answer so that the Defendant could not later portray the response as false and/or evasive!!!!!

It is clear that based upon the above facts in addition to those set forth in the Plaintiff's initial Memorandum of Law in response to the Defendant's earlier Motion to Dismiss, that the Plaintiff has not engaged in any "unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate" the action. Aoude v. Mobil Oil Corp., 892 F. 2d 1115 (1st. Cir. 1989). Instead, the Plaintiff has bent over backwards to try and cooperate and further discovery in this matter. She has voluntarily submitted to two days of deposition testimony, she submitted authorizations allowing the Defendant to obtain and verify her complete employment history and medical history and has sought to supplement her discovery responses as best she could.

The Defendant on the other hand continues to try and take advantage of the Plaintiff's lack of sophistication in an attempt to portray her as a liar and worse even thought it has made

---

directed to an office in Enfield which will provide us with copies of the records relating to the incident at Sally's Beauty supply. As soon as those records are obtained, they will be forwarded to opposing counsel.

no showing that the information sought has any relevance to the Plaintiff's claims in this action and/or its defenses thereto. Even assuming that the Defendant can point to instances of inconsistencies by the Plaintiff, those are better left for cross-examination since there has been no showing by the Defendant other than bald-faced assertions that the Plaintiff's conduct amounts to bad faith.!

### III. CONCLUSION

For all the foregoing reasons, the Plaintiff respectfully requests that the Motion to Dismiss be denied.

        THE PLAINTIFF,
        TONYA ROLLINS

By: *[signature]*
Michael E. Satti (Ct. 01311)
Holly Quackenbush Darin (Ct.10183)
Satti & Satti
225 State Street, Suite 200
New London, CT  06320
(860) 447-8975
-Her Attorneys-

13

## CERTIFICATION

The undersigned hereby certified that the foregoing motion was mailed, first class, postage prepaid, this 11th day of March, 2004 to all counsel and pro se parties of record as listed below:

Robert L. Keepnews
Suzanne M. LaPlante
Berman & Sable
100 Pearl Street
Hartford, CT 06103

_____
Michael E. Satti