UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TONYA ROLLINS, | : | CIVIL ACTION NO.: |
| Plaintiff, | : | 3:01CV951 (CFD) |
| | : | |
| V. | : | |
| | : | |
| HEERY INTERNATIONAL, INC., | : | |
| Defendant. | : | |
| | : | MARCH 24, 2004 |

### REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Presently before the Court is Defendant's Motion to Dismiss and for Sanctions. Plaintiff has filed a Memorandum of Law in Opposition to such Motion, to which Defendant now submits this Reply.

In her Memorandum in Opposition, Plaintiff opens by arguing that Defendant's Motion to Dismiss and for Sanctions is factually and legally unsupported and part of an ongoing "smear" campaign. More specifically, Plaintiff cannot understand why Defendant takes exception to her promise to "provide additional information, if any, as soon as possible," as opposed to simply disclosing a five-month old criminal conviction. Apparently, the fact of her guilty plea and resulting conviction left the Plaintiff still wondering if there was "any"

additional information to disclose.[1] There can be no question but that Plaintiff was obligated to disclose the fact of her recent criminal conviction, with such disclosure being augmented or supplemented on an "as needed" basis. Moreover, despite the Plaintiff's continuing obligation to unilaterally update her discovery disclosures, she deliberately chose not to reveal her most recent theft conviction. Indeed, the Plaintiff misleadingly agreed to provide further conviction information "if any" only *after* Defendant pressed her to provide the disclosure updates she conveniently held back. Moving deftly from the ridiculous to the sublime, Plaintiff offers a truly breathtaking explanation for failing to disclose her most recent criminal conviction: she had to examine her own criminal files to ensure an accurate response because Defendant has previously taken her to task for providing false or evasive information. Under Plaintiff's theory, she is not obligated to provide any information via discovery until a third party has provided independent confirmation of information already well known to her. In this way, discovery can be continuously frustrated under the guise of ensuring a "complete" response.

Plaintiff then proceeds to point out the various times that she previously disclosed her employment at Sally's Beauty Supply. What Plaintiff evades, however, is the fact that she

---

[1] Plaintiff expresses further dismay that Defendant would consider such obvious concealment "as if the Plaintiff lied and responded 'none' or failed to respond at all."

deliberately lied under oath about the reason for her termination from Sally's Beauty Supply (as well as other significant aspects of her employment history).

The following information, originally set forth in a prior pleading filed by the Defendant in this action, is so pertinent as to require recitation at length.[2]

Plaintiff takes umbrage with Defendant's contention that Plaintiff was "trying to hide anything" with respect to her prior employment at Sally's Beauty Supply. Whether or not Plaintiff properly disclosed her employment at Sally's Beauty Supply is overshadowed by her perjurious deposition testimony concerning the circumstances surrounding the termination of that employment. In her May 21, 2002 deposition, Plaintiff testified that she left "Sally's" *voluntarily* on April 16, 2002, because of a reduction in her working hours: "They hired more people, said they had to take hours from people."[3] It is now known from independent sources that on April 16, 2002, Plaintiff was confronted by the Loss Prevention Manager for Sally's Beauty Supply to whom Plaintiff admitted being responsible for the theft of $866.96 worth of merchandise.[4] It is no surprise that Plaintiff was able to recall an exact date as to her last day of employment at Sally's since she admitted to and was terminated for employee theft and <u>not</u> for a lack of hours, as Plaintiff testified under oath at her deposition.

---

[2] The Court is respectfully directed to Defendant's Reply to Plaintiff's Motion for Extension of Time, dated March 4, 2002.
[3] A copy of the pertinent page of the deposition transcript is attached hereto as **Exhibit A**.
[4] See "Arrest Warrant Application" attached to Defendant's February 3, 2004 Motion to Dismiss and for Sanctions and Costs, ¶ 2, 4.

BERMAN AND SABLE LLC
ONE FINANCIAL PLAZA, HARTFORD, CONNECTICUT 06103
(860) 527-9699  •  JURIS NO. 03840

Plaintiff testified falsely under oath with regard to other material aspects of her employment history. She joined Defendant in October 1997 after having previously worked at the Connecticut State Department of Environmental Protection ("DEP"). In her August 26, 2002 deposition, Plaintiff testified that she was "employed from December 1996 through or up to October of 1997 at the DEP."[5] Plaintiff's testimony was patently false.

Attached hereto as **Exhibit C** are copies of Plaintiff's pertinent employment records at the DEP, together with a transmittal letter from that Department. Those records show that Plaintiff worked at the DEP for a mere six weeks, from September 23, 1996, through November 4, 1996, and not into October 1997, when she joined the Defendant, as she testified under oath.[6] Not content to falsely stretch six weeks of employment into *ten months* just once, Plaintiff asserted emphatically at least *five* times that she "had to have" still been employed at the DEP in October, 1997, and testified unambiguously "Yes, I was still working there" as of October 13, 1997.

Plaintiff's efforts to avoid the legal consequences of her deliberate, repeated and

---

[5] A copy of the pertinent page of the deposition transcript is attached hereto as **Exhibit B**.
[6] As is the case with "forgetting" a five-month old criminal conviction, one does not simply overlook an eleven-month gap in employment history.

egregious abuse of the discovery process are equally unavailing.[7] Rollins takes the position that her demonstrated falsity under oath (which she euphemistically refers to as "instances of inconsistencies") do not hamper the Defendant in its claims or defenses, and therefore are not sanctionable. In other words, Plaintiff views herself as free to provide false or evasive responses as long as such responses do not, in her opinion, relate "directly" to what she has unilaterally determined are the "core" issues of alleged employment discrimination and retaliation. <u>McMunn</u> v. <u>Memorial Sloan-Kettering Cancer Center</u>, 191 F.Supp. 2d 440 (S.D.N.Y. 2002) makes it clear, however, that a party engages in unfair litigation practices at her own peril, without a bright line being drawn around "claims or defenses." A party's credibility is always relevant as a matter of defense. Moreover, much of the Plaintiff's false testimony relates directly to her employment history and her honesty towards her employers – matters of obvious material relevance to an employment discrimination claim. Plaintiff's false or evasive answers on matters going directly to her credibility and employment history are inherently prejudicial, and therefore sanctionable.

---

[7] It must be noted that in addition to the deliberately perjurious testimony which is the subject of this Motion, Defendant established in its first Motion for Sanctions that Plaintiff has also lied under oath about her name, her history of bad check and theft convictions (not including the theft conviction discussed above), her extensive litigation history, and her employment history (not including the false DEP employment history discussed above).

Defendant's Motion to Dismiss and for Sanctions should be granted.

                    DEFENDANT

By: _____
ROBERT L. KEEPNEWS (ct06787)
BERMAN AND SABLE, LLC
One Financial Plaza, 20th Floor
Hartford, Connecticut  06103
(860) 527-9699 (telephone)
(860) 527-9077 (facsimile)
E-mail: rkeepnews@bermansable.com

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, dated March 24, 2004 was mailed, via U.S. mail, first class, postage prepaid on this 24th day of March, 2004 to:

Holly Quackenbush Darin, Esq.
Michael E. Satti, Esq.
Satti & Satti
225 State Street, Suite 200
New London, Connecticut  06320

_____
ROBERT L. KEEPNEWS

BERMAN AND SABLE LLC
ONE FINANCIAL PLAZA, HARTFORD, CONNECTICUT 06103
(860) 527-9699  •  JURIS NO. 03840

# EXHIBIT A

Page 22

1  A  I was a night key person, key holder, for the
2     store.
3  Q  How did you find out about that job opening?
4  A  I had an application on file, and they called
5     me in for an interview.
6  Q  When you say you had an application on file, at
7     what point did you submit your application?
8  A  It was about -- I think maybe a year I had it
9     on file with Sally's because I used to -- I go
10    in there to get my beauty supplies.
11 Q  How long after you received the call for the
12    interview did you go in and interview?
13 A  Well, they called me, and I came in the next
14    day.
15 Q  Who did you interview with?
16 A  For the Norwich store, it was Gigi. I do not
17    know her last name.
18 Q  How long after you interviewed did you find out
19    that you received the job?
20 A  That day. She hired me that day.
21 Q  What was the position -- I'm sorry. The night
22    key holder?
23 A  Right.
24 Q  Was that a full-time position?
25 A  No. It was part-time.

Page 23

1  Q  How many hours a week?
2  A  It varied between 20 and 35 hours.
3  Q  What was the wage rate?
4  A  Seven dollars.
5  Q  How long were you employed there?
6  A  Approximately nine months.
7  Q  So when did you leave Sally's?
8  A  April 16th.
9  Q  Of 2002?
10 A  2002.
11 Q  I'm smiling because we have a date attached to
12    something. Thank you. How do you remember
13    that date so well?
14 A  I just do. I just remember April 16th was my
15    last day there.
16 Q  Okay. Was your leaving Sally's voluntary or
17    involuntary?
18 A  Voluntary.
19 Q  Okay. What was the reason for your leaving?
20 A  No hours. They hired more people, said they
21    had to take hours from people.
22 Q  Now, I'm assuming that you -- correct me if I
23    go wrong -- that you started at Sally's within
24    a couple of days of getting suspended by Dunkin
25    Donuts. You were hired the day of the

Page 24

1     interview, and then you began right away at
2     Sally's; is that accurate?
3  A  I wouldn't say a couple days. I would say
4     within that week I did start. I'm not sure of
5     the timeframe of when I did start, but I was
6     happy that I got the job.
7  Q  Okay. Do you know how much time was between
8     the point when you were told that you had the
9     job to the point when you actually started work
10    at Sally's?
11 A  No, "I'm not."
12 Q  But you think it was no more than a week?
13 A  I'm not sure about that. I'm not sure of the
14    timing of that, when I started with Sally's.
15    Between Dunkin Donuts and Sally's, I'm not sure
16    of the timeframe in there.
17 Q  But what about the time between you were given
18    the offer by Sally's and then actually started
19    work?
20 A  I'm saying within a week.
21 Q  Okay. You said that you left Sally's because
22    you didn't get any hours. Can you give me a
23    sense of how your hours dropped?
24 A  I went from 35 hours I could do in a week down
25    to like 15 in a week. So they was fluctuating

Page 25

1     because we had a few people leave. So that's
2     how I was getting a lot of hours until they
3     hired more people.
4  Q  Okay. Did you work anywhere else while you
5     were working at Sally's?
6  A  No, I didn't.
7  Q  Did you do a job search before you left
8     Sally's?
9  A  No, I didn't.
10 Q  So while you were working at Sally's, you did
11    not search for a new job?
12 A  No.
13 Q  Have you held any other jobs since leaving
14    Heery?
15 A  Any other jobs besides Sally's, Dunkin Donuts
16    and --
17 Q  Other than the ones that we just talked about
18    which were Health Care Visions, YMCA, Dunkin
19    Donuts and Sally's, have you held any other
20    jobs since leaving Heery?
21 A  No. No, I haven't.
22 Q  What have you done since April 16 of 2002 to
23    search for work?
24 A  I've been searching for work.
25 Q  What have you done to search for work since

# EXHIBIT B

Page 368

1  Q  So this was a Frank at DEP?
2  A  Correct.
3  Q  And the reason they gave for letting you go was
4  what? Was it that you had too many doctor appointments?
5  A  It wasn't that I had too many doctor
6  appointments. It was I had -- they just released me. I
7  had a lot of like surgeries and things. I wasn't able to
8  be there on time.
9  Q  Were there any other reasons given to you?
10 A  Not that I can recall.
11 Q  When was it that they released you?
12 A  I can't remember that. I don't remember the
13 date. I don't remember the date.
14 Q  Well, on Defendant's Exhibit 7 it indicates you
15 were still working there, right?
16 A  Right.
17 Q  Was that true?
18 A  I don't recall. I don't recall. I can't
19 speculate on this. I can't recall dates here.
20 Q  So it's possible that at the time that you
21 submitted this resume, that you had already been
22 terminated by DEP?
23 A  I'm not sure. I'm not sure about the dates
24 here at all.
25 Q  So it's possible that when you applied with

Page 369

1  Heery for employment, that you had already been
2  terminated by DEP?
3  A  Yes. It's possible.
4  Q  So even with the representation on your resume
5  saying you were still employed there, you would have lied
6  to Heery about whether you were currently employed at
7  DEP?
8  A  Well, I'm not going to say this is a lie
9  because the way I'm looking at this right now is -- when
10 I applied for this position, I had to have still been
11 working here. This is just a resume, something I
12 submitted over. So I could have still been working
13 there.
14 Q  Well, that's the question.
15 A  I could have still been working here. This is
16 just a resume, something I submitted to get a job. I
17 could have still been employed. And I'm thinking I was
18 still employed at the time.
19 Q  But you don't know?
20 A  But I'm not sure. But I'm pretty sure. I
21 wouldn't just lie on a resume. What I'm saying is when
22 this position became available I had to have still been
23 working there is what I'm telling you.
24 Q  You're pretty sure you wouldn't lie on a
25 resume, but you're not sure?

Page 370

1  A  I wouldn't have lied like that, no. Because I
2  had to have still been working here when I submitted this
3  resume for the position at Heery's. I had to have still
4  been working here. If they was to contact me for an
5  interview and I had this down with the phone number, why
6  would I put that? No, I had to have still been working.
7  Q  So that means that you were employed at DEP
8  from December 1996 to October of 1997?
9       MS. QUACKENBUSH DARIN: Objection as to
10 form. I'm not sure what you mean by "that means." What
11 she says here or -- go ahead.
12 BY MS. HAERTER:
13 Q  Based on your testimony and based on what
14 you've represented on your resume on Defendant's Exhibit
15 7, you're telling me that you were employed from December
16 1996 through or up to October of 1997 at the DEP?
17      MS. QUACKENBUSH DARIN: Objection as to
18 form. Go ahead.
19 A  Yes. I believe I had that job until the 13th.
20 Yes, I still was working there.
21 BY MS. HAERTER:
22 Q  You seem more an more certain of that.
23 A  Yes, because I just wouldn't put present on
24 there and not be there if they had to call me to come in
25 for an interview because I'm at the DEP, it's right down

Page 371

1  the street. They would have to contact me.
2  Q  Now, according to Defendant's Exhibit 7, your
3  resume, you were at Super 8 Motel from January 1996
4  through December 1996, correct? I'm reading upside down,
5  so --
6  A  Right. That's what it's showing.
7  Q  So according to your resume, you went from your
8  Super 8 job to the DEP job within the same month; is that
9  right?
10 A  I think this date here is wrong on Super 8.
11 Q  What date do you think is wrong?
12 A  I don't recall the dates for Super 8. I don't
13 recall the dates. It's so long ago. I don't recall the
14 dates at all.
15 Q  What date do you think is wrong?
16 A  January. I'm not sure of the dates.
17 Q  Did you change jobs from Super 8 to DEP within
18 the same month as indicated on your resume?
19 A  I don't know if it was before or after. Like I
20 said, I'm not sure of the dates.
21 Q  Well, you're not sure as you sit here today.
22 When you made up this resume, it could have been closer
23 in time to the actual time that you held the jobs; isn't
24 that right?
25 A  Right. But if you're not good with dates,

# EXHIBIT C




# STATE OF CONNECTICUT
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

February 4, 2004

Robert L. Keepnews Esq.
Berman and Sable LLC
One Financial Plaza
Hartford, CT 06103

Re:   Tonya Rollins – SS# ███████3

Dear Attorney Keepnews:

In response to your request, I have attached copies of the employment data on the above captioned employee,

Ms. Rollins was employed at the Department of Environment Protection from September 23, 1996 through November 4, 1996 as a seasonal employee, and worked a total of 162-1/2 hrs. The time and attendance records are enclosed.

If I may be of further assistance, please let me know.

Sincerely,

Elizabeth M. Villante
Financial Clerk, Payroll Unit

Enclosures

```
MODE:F ACTION:
-------+--------------------------------+--------------------------+----------+--+-+------+
EMP HIST (301) PRECORE!      |Request for Action: EMPLOY      |Pg 1 |HR07S600|
-------+--------------------------------+--------------------------+----------+--+-+------+
PERSON|01 EffDt:09/23/1996|                              |02 Comm#:3100|1997| 1829|
-------+-------+--------------+--------------------------+----------+----+----+------+
90 Pg2 91 Pg3 |03 *EMP#: 616668    |04 Term Dt: 10/15/1996|Histry( 2 of  2)|
92 Remarks +--+    SSN :        3  +----------------------+--+----------------+
-----------+Last: ROLLINS          |                      |06 *Pos#: 00008849 |
           |Frst: TONYA            |PosTerm: 11/04/1996|OUTR-BOAT-BOAT-SPE |
           | MI  :                 |                   |*Ag:3100 NRR:DEP    |
-----------+-----------------------+-------------------+--------------------+
05    Act Cd: EM  EMPLOY                                                    |
      Lv/Sep Type:                                     Exp:                 |
      *SalChg Rsn:                                 11 Rules BU:             |
-----------+------+---+---+-----+----+------------------+------------+----+
      ClassCd|CmpPln|Grp|Prd|  BU |Step|Rate/Class Abbrev|            |FLSA|
From:        |      |   |   |     |    |                 |            |    |
             |      |   |   |     |    |                 |            |    |
-----------+------+---+---+-----+----+------------------+------------+----+
Prp:07*3492| *VR  |*99|*H | *04 | 00 |08     $6.50      |10 *Deg:    |09 N|
           |Flat R|   |   | OTHR|    |EP SEAS RES ASST  |            |    |
-----------+------+---+---+-----+----+------------------+------------+----+
INFO: This person is not currently employed.
```